IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AKORN HOLDING COMPANY LLC, *et al.*,[1]<br><br>              Debtors. | Chapter 7<br><br>Case No. 23-10253 (KBO)<br><br>(Jointly Administered) |
| GEORGE MILLER, Chapter 7 Trustee of the bankruptcy estates of Akorn Holding Company LLC, *et al.*,<br><br>              Plaintiff,<br><br>            v.<br><br>CARDINAL HEALTH, INC.,<br><br>              Defendant. | Adv. Proc. No. 24-50041 (KBO)<br><br>**Obj. Deadline:** 9/5/2024, at 4:00 p.m. (ET)<br>**Hearing Date:** 9/17/2024 at 10:00 a.m. (ET) |

**MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTION 105(A) OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULE 9019
APPROVING THE SETTLEMENT BETWEEN THE TRUSTEE AND
CARDINAL HEALTH, INC.**

      George L. Miller, the chapter 7 trustee (the "Trustee") in the above-captioned chapter 7 cases (the "Chapter 7 Cases") for the bankruptcy estates of Akorn Holding Company LLC, Akorn Intermediate Company LLC and Akorn Operating Company LLC (collectively, the "Debtors"), hereby moves (the "Motion") the Court pursuant to section 105 of title 11 of the United States Code, §§ 101-1532, as amended (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order, substantially in the form

---

[1]     The Debtors in these Chapter 7 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Akorn Holding Company LLC (9190); Akorn Intermediate Company LLC (6123) and Akorn Operating Company LLC (6184). The Debtors' headquarters was located at 5605 CenterPoint Court, Gurnee, Illinois 60031.

attached hereto as **Exhibit A** (the "Proposed Order"): (i) approving the settlement of certain claims, including for payment of goods sold and delivered, breach of contract, account stated, unjust enrichment, turnover of accounts receivable under sections 105(a) and 542 of the Bankruptcy Code, and disallowance of claims under section 502(d) of the Bankruptcy Code (the "Claims") and entry into a Settlement Agreement (the "Settlement Agreement") by and between the Trustee and Cardinal Health, Inc. (the "Defendant", and together with the Trustee, the "Parties"), attached hereto as **Exhibit B**, and (ii) granting such other relief as may be just and proper.  In support of this Motion, the Trustee respectfully represents as follows:

## JURISDICTION

1.The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334(b) and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.

2.This is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Trustee consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.The bases for the relief requested herein is section 105 of the Bankruptcy Code, as supplemented by Bankruptcy Rule 9019.

**BACKGROUND**

5. On February 23, 2023 (the "Petition Date"), each of the Debtors, Akorn Holding Company LLC, Case No. 23-10253; Akorn Intermediate Company LLC, Case No. 23-10254 and Akorn Operating Company, LLC, Case No. 23-10255 filed voluntary petitions in the Bankruptcy Court for relief under Chapter 7 of Title 11 of the Bankruptcy Code, commencing the Chapter 7 Cases. The Chapter 7 Cases are being jointly administered.

6. On or about the Petition Date, the Office of the United States Trustee appointed the Trustee as the trustee to the bankruptcy estates of each of the Debtors.

7. Prior to the Petition Date, the Debtors' businesses included developing, manufacturing, and marketing specialty pharmaceuticals, including prescription, consumer health, and animal health products.

8. The Debtors were an industry leader in branded and generic products in alternate dosage forms such as ophthalmic, injectables, oral liquids, topicals, inhalants and nasal sprays.

9. The Debtors operated at numerous locations in the United States and were headquartered in Gurnee, Illinois. The Debtors' operations in the United States have all ceased.

10. As a result of the cessation of the Debtors' operations, the Federal Drug Administration issued a post-petition voluntary recall of certain drugs produced by the Debtors.

11. Defendant, purportedly on behalf of itself and its affiliates, filed a proof of claim against each Debtor in an undetermined amount (the "Proofs of Claim"). *See* Case No. 23-10253-KBO Claim Register, Claim No. 383; Case No. 23-10254-KBO Claim Register, Claim No. 229; Case No. 23-10255-KBO Claim Register, Claim No. 427.

12. Since the date of his appointment, the Trustee has been investigating and marshalling the Debtors' assets, including unpaid amounts owed to the Debtors under prepetition contracts.

13. Based upon that investigation, on April 15, 2024, the Trustee filed an adversary proceeding styled *George L. Miller v. Cardinal Health, Inc.*, in the Bankruptcy Court, commencing the adversary case number 24-50041 (KBO) (the "Adversary Proceeding").

14. In the Adversary Proceeding, the Trustee filed a complaint against the Defendant demanding payment of $27,887,000.00 (the "Amount Demanded") on account of prepetition pharmaceutical products supplied by the Debtors to Defendant for which the Debtors had not been paid as of the Petition Date (the "Complaint").

15. Due to the complexity of pharmaceutical billing, this amount represents in excess of 2,250 separate invoices sent to Defendant between May 15, 2020, and the Petition Date.

16. In the Complaint, the Trustee seeks to collect the Amount Demanded under the following legal theories: (i) payment of goods sold and delivered; (ii) breach of contract; (iii) account stated; (iv) unjust enrichment; (v) turnover of accounts receivable; and (vi) disallowance of the Proofs of Claim.

17. Defendant disputes the amount owed.

18. Consistent with Defendant's Proofs of Claim, Defendant alleges that it is entitled to certain setoffs, credits, rebates and reductions which may reduce its liability pursuant to the applicable state law and the underlying agreements.

19. Defendant further alleges that the voluntary recall by the Debtors upon the bankruptcy filing was a breach of contract by the Debtors, entitling Defendant to damages, and that the recall rendered certain products unmarketable.

20. The Trustee disputes the nature and amount of these claimed defenses and setoffs.

21. The Trustee and Defendant have engaged in extensive exchanges of information in an attempt to reconcile the amount owed to the Debtors by Defendant.

22. As a result of these information exchanges and lengthy negotiations between the Trustee and Defendant, the Defendant and the Trustee have agreed to settle the Adversary Proceeding, subject to this Court's approval.

23. The terms of the settlement between the Trustee and Defendant are embodied in the Settlement Agreement attached hereto as **Exhibit B**.

24. The key terms of the Settlement Agreement[2] are as follows:

   a. Defendant will pay $6,940,000.00 to the Trustee within fifteen (15) business days of the entry of an order approving this Motion;
   b. Within ten (10) days of receiving payment, the Trustee will dismiss the Adversary Proceeding with prejudice;
   c. The Trustee and Defendant will provide mutual releases of all claims and causes of action, known or unknown; and
   d. The Proofs of Claim filed by Defendant are disallowed.

25. The Settlement Agreement is the result of extensive, active, good-faith discussions and arms' length negotiations between the Trustee and Defendant. The Settlement Agreement is a good faith exercise of the Trustee's business judgment and should be approved.

## RELIEF REQUESTED

26. Pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, the Trustee seeks entry of an order substantially in the form attached hereto as **Exhibit A**: (i) approving the Settlement Agreement, and (ii) granting such other relief as may be just and proper.

---

[2] This summary of key terms is provided for convenience; in the event of any conflict between the Motion and Settlement Agreement, the Settlement Agreement will control.

**BASIS FOR RELIEF**

27. Section 105(a) of the Bankruptcy Code allows a court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Bankruptcy Rule 9019 provides:

> On motion of the trustee, after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

28. When reviewing settlements under Bankruptcy Rule 9019, the court generally defers to the Trustee's business judgment. "[U]nder normal circumstances the court would defer to the trustee's judgment so long as there is a legitimate business justification [for the settlement]." *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996).

29. Settlements and compromises are "a normal part" of the chapter 11 process. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). The Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy." *Id.* at 393 (quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); *see also In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy"). The approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. *See, e.g.*, *In re Coram Healthcare Corp.*, 315 B.R. 321, 329 (Bankr. D. Del. 2004).

30. Pursuant to Bankruptcy Rule 9019(a), the Court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and equitable. *See In re Key3Media Grp., Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005) (noting that "the bankruptcy court has a duty to make an informed, independent judgment that the

compromise is fair and equitable."). The court need not be convinced that the settlement is the best possible compromise in order to approve it. *Coram Healthcare Corp.*, 315 B.R. at 330. Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." *Travelers Cas. & Sur. Co. v. Future Claimants Representative*, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing *Matter of Jasmine, Ltd.*, 285 B.R. 119 (D.N.J. 2000)).

31. In determining whether a settlement is fair and equitable, the Third Circuit has adopted a balancing test, under which a bankruptcy court should decide whether to approve a particular compromise or settlement. The factors of the balancing test are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d at 393; *see also In re Nutraquest, Inc.*, 434 F.3d 639, 646-48 (3d Cir. 2006) (applying *Martin* factors).

32. Courts should not determine whether the debtor is getting the best possible settlement, but rather whether the compromise is reasonable. *See In re Integrated Health Services, Inc.*, Case No. 00-398 (MFW), 2001 WL 1820426, at *2 (Bankr. D. Del. Jan. 3, 2001) (in approving a settlement, a court is not to determine that the settlement is the best that can be achieved but "rather to canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness'") (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

33. When deciding whether to approve a compromise, a court will normally accept the judgment of the movant as long as a legitimate business justification exists. *E.g.*, *Martin*, 91 F.3d at 395; *In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 250 (D. Del. 1998); *see also In re*

*Penn Central Transportation Co.*, 347 F. Supp. 1351, 1353 (E.D. Pa. 1972) (approving settlement agreement as reflection of business judgment). Once a debtor has articulated a valid business justification for a settlement, "[t]he business judgment rule is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkam*, 488 A.2d 858, 872 (Del. 1985)).

34. In the present case, the Settlement Agreement satisfies the aforementioned factors and considerations.

35. First, although the Trustee disputes the merits, amount and validity of Defendant's claimed credits, damages, alleged defenses and setoffs, if the Trustee were required to litigate, the probability of or size of success would be uncertain. The outcome of the litigation would be subject to the discretion of a relevant factfinder. Disputes over the interpretation of the underlying contracts, the post-petition marketability of the products, the timing of payments and the legal theories underlying the asserted setoffs all create legal and factual risks. The Settlement Agreement entirely eliminates this litigation risk and provides the estate with a certainty of recovery.

36. Second, the collections process is always fraught with additional hurdles that would impose costs upon the Trustee. While the Trustee has no reason to believe at this point that Defendant would not be cooperative in paying any ultimate judgment in favor of the Trustee should the matter have proceeded to trial, Defendant is not a convenient collections target should it choose to be uncooperative. Regardless, settling with the Defendant eliminates any potential time and expense associated with any collection hurdles by providing a simple lump sum payment shortly after this Court's approval of the Settlement Agreement.

37. Third, the litigation, necessary to reach a final judgment against Defendant, is complex, time-consuming and costly. The Adversary Proceeding is still relatively young; Defendant has not filed a response to the Complaint. Proceeding through the likely rounds of dispositive motions would take months, if not years, before the Adversary Proceeding is procedurally ready for trial. Moreover, the Trustee's claims in the Adversary Proceeding all arise from pharmaceutical billing, a notoriously complex and voluminous process administered under sophisticated contracts and billing systems. Any alleged setoffs asserted by the Defendant arise in part from credits generated by the constant flow of obligations from pharmaceutical product providers (like the Debtors) to distributors (like Defendant) to retail or other customers, all mediated by insurance and governmental payment programs. In litigation, both sides, through discovery, would need to provide extensive forensic analyses of the 2,250 (or more) transactions to determine which amounts may be setoff against other amounts. The experts necessary to formulate these analyses would represent a significant cost to both sides, since they would need to understand not just accounting but certain principles of pharmaceutical billing and collection. Therefore, the Trustee believes that his reconciliation with the Defendant of the amounts owed and agreed upon settlement, has saved the estate significant time and expense all while returning meaningful payment to the estate.

38. Fourth, the Settlement Agreement serves the paramount interest of the creditors. As discussed above, the Settlement Agreement eliminates the risks, costs and delays of litigation, preserving estate resources for other purposes and lightening the administrative burden on the estates.

39. Moreover, even if the Trustee were successful in litigation such that Defendant had minimal setoffs, the outcome might well entitle Defendant to a large claim from the bankruptcy

estate on account of the Proofs of Claim. The Settlement Agreement eliminates the Proofs of Claim (and all other rights of Defendant to receive money from the Debtors' estates), reducing the creditor body to be paid in these cases.

40. The Settlement Agreement thus provides a threefold benefit to the Debtors' creditors: it brings in money for distribution, eliminates administrative costs to the bankruptcy estate and reduces the competing claims pool.

41. Based upon the foregoing, there can be no question that the compromise embodied in the Settlement Agreement does not "fall below the lowest point in the range of reasonableness." *Integrated Health*, 2001 WL 1820426, at *2 (*quoting Cosoff v. Rodman (In re WW.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983)). The Settlement Agreement is the result of substantial good faith, arm's length negotiations between the Trustee and Defendant and constitutes a reasonable exercise of the Trustee's business judgment. Accordingly, this Court should exercise its discretion and approve the Settlement Agreement.

**WHEREFORE**, for the reasons set forth above, the Trustee respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, (i) approving the Settlement Agreement, and (ii) granting such other relief as may be just and proper.

Dated: August 22, 2024
Wilmington, Delaware

**SAUL EWING LLP**

/s/ *Evan T. Miller*
Evan T. Miller (DE Bar No. 5364)
Paige N. Topper (DE Bar No. 6470)
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
Telephone: (302) 421-6800
evan.miller@saul.com
paige.topper@saul.com

and

Michelle G. Novick (admitted *pro hac vice*)
161 North Clark Street, Suite 4200
Chicago, IL 60601
Telephone: (312) 876-7899
michelle.novick@saul.com

and

Turner N. Falk (admitted *pro hac vice*)
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-8415
turner.falk@saul.com

*Counsel to Plaintiff*